## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT

### OF THE

## STATE OF VERMONT.

---

JOSEPH H. BRAINARD *vs.* CORNELIUS STILPHIN Jr. and DANIEL SANBORN.

FRANKLIN,
January,
1834.

Where a warrant to collect a fine, issued by a militia officer, recites that the same was inflicted by C. S., Captain, but is signed by C. S. Jun. Captain, the process is legal.

Junior, in law, is no part of a person's name,

This was an action of *trespass* brought against the defendants to recover the value of a small quantity of cloth, which, on trial it appeared, was sold by Sanborn, one of the defendants, on a pretended execution issued by Cornelius Stilphin Jr. as Captain of a company of militia, on an amercement of the said Brainard, for delinquency of military duty. The defendants plead the *General Issue* with notice ; and offered in evidence an execution against the said Brainard, signed by the said Stilphin ; to which the plaintiffs objected, because it did not appear that the amercement was mas made by Cornelius Stilphin Jr., but by Cornelius Stilphin, Captain, &c. ; and the same was excluded by the Court. The defendants then offered to prove by parol that Cornelius Stilphin, Captain of said company, was the same identical person who signed said execution by the name of Cornelius Stilphin Jr. This testimony was objected to by the plaintiffs, and excluded by the Court. To these decisions of the Court the defen-

2

FRANKLIN,
January,
1834.

Brainard
vs.
Stilphin et al.

dants excepted. Whereupon, the case was passed to the Supreme Court for further adjudication.

*Argument for defendants.*—It is contended by the defendants, that the County Court manifestly erred in not permitting the execution referred to in the case, to go to the jury as evidence.

The fact, that it appeared from the face of the execution, that the amercement was made by " *Cornelius Stilphin, Captain of said company,*" and signed by " *Cornelius Stilphin Jr. Captain,*" did not constitute any legal difficulty as to personal identity, inasmuch as the word *Junior* is not in legal contemplation any part of a man's name.—5 John. Rep. 84, *Franklin* vs. *Talmadge.*—10 Mass. Rep. 205, *Kincaid* vs. *Howe.*—18 Mass. Rep. 388, *Commonwealth* vs. *Perkins.*—1 Salk. 6.

Again, if in point of *fact,* there was any difficulty as to identity, the Court ought to have admitted the testimony offered by the defendants to go to the jury, to show that the person who signed the execution was the same that amerced the plaintiff.

*Argument for plaintiff.*—The plaintiff contends, that so much of the statute law of this State, as establishes Courts Martial, and authorizes them and military officers to collect fines or penalties, under which the defendants pretend to have acted, is unconstitutional, & therefore void ; because, by making a military officer prosecutor and Court, to issue execution to collect fines and penalties, the law is repugnant,

1st, To the 8th Article in addition to and amendment of the Constitution of the United States, which guarantees to the citizen, in all criminal prosecutions in time of peace, a trial by an impartial jury.

2dly, To the 12th Art. 1st Chap. Const. of this State, which declares, " That when any issue in fact, proper for the cognizance of a jury, is joined in a Court of law, the parties have a right to trial by jury, which ought to be held sacred."

3dly, To the 16th Art. 1st Chap. Const. of this State, which declares, " That the military should be kept under strict subordination to, and be governed by the civil pow-

FRANKLIN,
January,
1834.

Brainard
vs.
Stilphin et al.

er." The plaintiff insists that this clause, taken in connexion with what herein precedes and follows from the Constitution of this State and the United States, means that the civil authority shall make rules or laws to govern the military; and that in time of peace the civil power, or magistrate, assisted by a jury, shall execute them, or any other laws, when they affect the lives, liberty, or property of a citizen. There is a set of military punishments, applicable only to the honor, feelings and rank of military men, which military officers or courts martial may inflict in time of peace.

4th, To the 17th Art. 1st Chap. Const. of this State, which declares, "That no person in this State can in any case be subjected to law martial, or any pains or penalties by virtue of that law, except those employed in the army, or the militia in actual service."

If it is consistent with this Article to subject citizens to the penalty of losing their property, or personal liberty by the directions of military officers, or courts martial, governed by, and deciding upon military principles, or rather no principles at all, then may citizens be subjected *by statute law* to the punishment of *whipping*, *branding* and *cropping*, and even to the *pains of death* itself by the decision of the same military officers, or courts martial, without the verdict of jury. It is evidently the meaning of this Article of the Constitution, that no military officer, or court martial, or military law should have any power over the lives, liberty and property of the citizen.

2d. The Court rightly excluded the execution offered in evidence by the defendants, because it is repugnant and void on the face of it. A man and his father cannot be one and the same person.

3d. The Court rightly rejected the offer of the defendants to add to, falsify, and contradict, by parol, their own written evidence, evidence (made absolutely necessary to their defence by law) in which neither a Court of law or equity can correct any mistake; and in criminal matters (like the one in which the present execution issued against the plaintiff) there is not even an amendment allowed in any Court. It being an inflexible rule of law that parol evidence cannot in any case be substituted for a written

FRANKLIN,
January,
1834.

Brainard
vs.
Stilphin et al.

instrument like the execution offered in evidence by the defendants; nor to add to, contradict, alter, vary, or explain such instrument: For if the defendants have a right to add to, contradict, vary or explain such instrument, then the plaintiff must have the same right: and thus every fact, alleged in the instrument, may be put in issue, and the Court be obliged to try them, and thereby the issue become multifarious, and all reliance upon written evidence even of the highest character be entirely destroyed.—Chip. 103, 115, 215, 227.—3 Vt. Rep. 202, *Edgell* vs. *Staniford.*—3 Stark. Ev. 997 to 1014, 1020-6, 1043-4, note 1 to 1044.

4th. The mistake, if any, in the execution, which the plaintiff does not admit, is one which the defendants made; and they, not the plaintiff, ought to suffer the consequences.

The opinion of the Court was pronounced by

MATTOCKS, J.—-The question which is raised in this case, is whether there is such a fatal repugnancy in the extent or execution under which the defendants justify, as to make the Captain, who issued the same, and the Orderly Sergeant, who executed it, trespassers. And the objection is, that the warrant recites that the fine was inflicted by Cornelius Stilphin, Captain, and is signed by Cornelius Stilphin Jr. Captain. If these names must be considered as meaning two persons, then the process is bad. But if they may be considered the same person by any legal intendment, then it is well. Questions of misnomer have generally arisen upon pleas of abatement, and our ancient sages were nearly as nice upon names, as the Fathers were upon the question whether a baptism in bad Latin could be canonical. In *Crane* vs. *King*, 1 Will. 554, the plaintiff declared against Henry King, otherwise Henry Vaughan King; and the declaration was adjudged bad, because the defendant could not have two christian names at the same time. In *Holman* vs. *Walden*, 1 Salk. 6, defendant plead in abatement that he was baptized by the name of John, and was not called or known by the name or surname of Benjamin Walden. Plaintiff replied he was called and known by the name and surname of Benjamin Walden. To this defendant demurred, and at first the Court

inclined against the replication, on the ground that the on-ly material part of the plea was the name of baptism, and that he could have no other. But at last it was decided the other way—Ch. J. *Holt* saying that " one may have a nomen and a cognomen, that never was baptised, as thousands in fact have :" and in *Bowen* vs. *Shapcott*, 1 East. 542. and in *Sabine* vs. *Johnstone*, 1 Bos. & Pul. 60, it was decided that if the defendant was known by one name as well as another, he might be sued by either. In *Franklin* vs. *Talmadge*, 5 John. R. 84, it was decided that a writ should not abate for omitting the middle name, on the old ground that a person has no right to have two christian names.

In *Lepra* vs. *Brown*, 1 Salk. 7, defendant was declared against as A. B. of D. in the custody of the Marshal. The defendant pleaded in abatement that his father lived in D. likewise, and that his name was A. B., and that he, the defendant, ought to have been called *Junior* in the bill.— The Court said, any other appellation to distinguish father and son was as good as *Senior* or *Junior* ; and the son's being in the custody of the Marshal, was a sufficient distinction. They also said, if father and son had lived in different counties, & the process had been an original one, there had been no need of such addition ; and in pursuance of this, the Courts in New-York and Massachusetts have decided that *Junior* is not in law any part of a person's name. Indeed how *can* it be? Not by baptism.—No male is thus baptized : and females, it is believed, never have that appellation. The son, when he comes to correspond, or do business, assumes this addition to his name, if his residence is near his father's, to prevent mistakes by confounding names and persons : and this, as the residence of either party shifts, he drops and assumes at pleasure, not asking leave of the Legislature, as is done when it is proposed to exchange an uncouth name for one that is more sonorous. *Junior*, then, being but an addition of designation, which it is sometimes proper to use, and sometimes useless, like 2d and 3d, which are also often used : and as the propriety of its use depends on time and place, if the Captain was C. Stilphin Jr. as he has signed himself—if on the 28th day of June, when the plaintiff was amerced, his father lived out of the county, according to 7 Salk., or out of

town, according to the practice of some, or out of the State or the United States, then the Captain might have properly called himself Cornelius Stilphin : and if before the 15th of July, 1830, when the execution was dated and signed, the father had come into the same town or county to dwell, then it would have been consistent to sign himself Cornelius Stilphin Jr. Captain. If such was the fact, the proceedings would be punctiliously correct. And to meet a technical objection founded on a clerical error in fact, any intendment short of absolute absurdity should be made.—But upon more enlarged principles, as *Junior* is no part of the name, why may it not be expunged or treated as surplusage, as if it had been " of St. Albans, or Roanoke ?"—and then the *two* supposed Captains will be a *unit*, and this *Junior* will no longer perplex his *Seniors* by causing them to demur upon this knotty case.

The constitutionality of the militia law has been presented in the plaintiff's brief in this Court : but as that question was not stated below, and this law has been so long acquiesced in, we have not thought it necessary to go into that point.

Upon the whole, we think there is no such irregularity in this extent as would render it void, or not a justification to the Justice and Sheriff if it had been an execution. And it would be the height of injustice to hold military officers, whose main duties are not of a clerical cast, to a greater strictness in such matters than would be required of the judiciary, whose duty it is especially to know and to follow the forms of law.

The judgement of the County Court is reversed.

*Stephens, Smith & Royce,* for defendants.

————— ———, for plaintiff.