WILLIAM H. ISAACS, ADMINISTRATOR OF BENJAMIN ISAACS,

v.

EPHRAIM WILEY, JONATHAN ELKINS AND JOHN W. CHANDLER,

AND

GEORGE CARPENTER v. WILLIAM P. SAWYER AND CHARLES
JEWETT.

In a collector's sale, it is necessary, to pass a title, that the committee should
have furnished the collector a tax bill, showing the delinquent lands, the
proprietors' names, the number of acres and the amount of the tax.

This is required to be done before the collector enters upon the duties of his
office in order to determine the amount of his bond.

An initial letter in the middle of one's name is no essential part of the
name.

If the purpose for which the tax was granted be intelligibly stated in the
advertisements, it is not important it should be stated in the terms of the
statute granting the tax.

Quære—Whether the record of the list of unredeemed lands is essential to
the title of purchasers at such sales.   If it be so, a mere circumstantial
error therein, not calculated to mislead any one, will not defeat the title.

BOTH these cases were argued and considered together.
The first was ejectment for lot No. 8, in the fourth range,
in the town of Eden.   Plea, not guilty and trial by jury.

Upon the trial in the county court the plaintiff having
shown a title to the land in his intestate and that the defen-
dant, Wiley, was the tenant of the other defendants, the de-
fendants offered in evidence a deed, dated February 3, 1831,
from Jonas Stone, collector of a land tax, to the defendants,
Elkins and Chandler, and also the records of a vendue sale of
the land in question, being the same vendue stated and con-

sidered by the court in the case of *Isaacs, administrator of Isaacs* v. *Shattuck*, ante, p. 668, to all which the plaintiff objected, and the deed and record were rejected by the court.

LAMOILLE,
August,
1839.

Isaacs, Admr.
v.
Wiley *et al.*
and
Carpenter
v.
Sawyer *et al.*

The defendants then offered in evidence a vendue deed of the lot in question to the defendant, Elkins, from Luther Kidder, collector of a land tax assessed upon the lands in Eden, by the legislature, at their session in 1831, for the purpose of making roads, &c., which deed was dated June 6, 1834, accompanied by the rate-bill and the records of the vendue, which deed and records were also objected to by the plaintiff and rejected by the court. The jury, under the direction of the court, gave a verdict for the plaintiff, and the defendants excepted.

The substance of the records of the latter vendue sufficiently appear from the opinion of the court.

The case of *Carpenter* v. *Sawyer & Jewett* was trespass for breaking and entering lot No. 2, in the fifth range in the town of Eden, and cutting and carrying away timber. Plea, not guilty and trial by jury.

The plaintiff, to make out a title to the *locus in quo*, offered in evidence a deed to himself from Luther Kidder, collector of a land tax, and the rate-bill and records of a vendue sale of the lot in question by said Kidder to the plaintiff, which records and rate-bill were the same that are above stated in the case of *Isaacs, Administrator*, v. *Wiley et al.*, to the admission of which the defendants objected and they were rejected by the court. The jury, under instructions from the court, returned a verdict for the defendants, and the plaintiff excepted.

The granting of the tax was admitted in both cases, and it was proved that the collector executed a bond to the committee in due time, whether in the penal sum of twenty *seven* hundred and twenty eight dollars or twenty *eight* hundred and twenty eight dollars was left, by the evidence, in some doubt ; but it rather tended to establish the latter sum as the penalty.

It was also proved that the committee, previous to the exhibition of their account to the county court for allowance, posted up written notices of their intention to present such account, in conformity with the statute in such case provided.

Isaacs, Admr.
v.
Wiley et al.
and
Carpenter
v.
Sawyer et al.

It was not shown what portion of the payments, made before the sale, and minuted in the rate-bill, or book of assessments, were entered in said book before it was committed to the collector, nor what portion was entered by the committee, or by the collector.

*Willard & Poland*, argued for the defendants in the former, and for the plaintiff in the latter suit, and *J. Sawyer and Maeck & Smalley, contra.*

The opinion of the court was delivered by

REDFIELD, J.—In the first of these cases, the defendants' title, and in the second case the plaintiff's title, depends upon the competence of evidence, offered by them respectively, in support of two collector's sales of the lands in question. The proceedings in support of the first sale have already been held defective, in the case of *Isaacs, Administrator*, v. *Shattuck.* Many of the exceptions taken in this case to the other sale were overruled in the former case alluded to. I shall now confine my remarks to those exceptions, which were not then considered. The testimony in support of this last sale, as well the record as the evidence to prove the rate-bill, was rejected by the court below as being incompetent for the purposes for which it was offered. If that testimony was competent, although not sufficient to make out a perfect title, the case must be remanded to that court for further proceedings.

1. The tax bill is said to be insufficient. It will be remembered that the statute does not, in terms, require a tax-bill. But as it does require the collector, before he enters upon the duties of his office, to execute a bond, in " double the amount of such tax as he may be appointed to collect," it seems to pre-suppose that the *amount* of the tax, which he is to *collect*, shall be ascertained before he gives the bond. It was held in *Spear* v. *Ditty*, 8 Vt. R. 419, that the amount of the bond was to be determined by the amount of the tax, which was not voluntarily paid to the committee, and which it thereby became necessary to put into the hands of the collector. Hence, in that case, it was considered, that a tax-bill must be furnished the collector by the committee. But it is no where required that the tax-bill should appear of record, nor indeed that it should be preserved in its original

form. It is a matter resting wholly *in pais*, and, like any other
fact, may be proved before the jury, by the best testimony in
the power of the party. And it is always sufficient to show,
by such evidence, that the tax-bill was originally furnished
the collector by the committee. Whether the collector pre-
served it in its original form, or subsequently suffered it to
become mutilated or obscured, is perhaps not very impor-
tant, except so far as regards the proof which shall now be
required to show its existence and character. In the present
case the original tax-bill was produced ; and it seems to have
contained all the essential requisites, *i. e.* the description of
the delinquent lands, the names of the proprietors, the num-
ber of acres, and the amount of the tax. That it contained
also the description of other lands, upon which the taxes had
been paid to the committee, with an entry to that effect,
could not in any manner tend to mislead the collector.
Those entries were, to all intents, *functus officio*, the same
as if they had never been made, or had been erased. That
the collector continued to enter, upon the same bill, taxes
paid to himself, up to the day of sale, so that it cannot now
be determined what amount of tax was originally put into
his hands by the committee for collection, is an argument
against the *sufficiency*, rather than the *competency* of the
evidence, and more properly addressed to the jury than to
the court. The argument, which has been attempted, that,
as the bond is for the security of the committee alone, any
bond to their acceptance, should be held a compliance with
the statute, is not a little plausible, but, at the same time, is un-
satisfactory. We hold the giving of a bond, and such a
bond as the statute requires, to be indispensable to pass the
title, not because we consider that the public, or the land-
holders, have any indirect interest even, in the security which
it affords, but because a strict compliance with all the prere-
quisites of the statute is considered necessary, in this class of
cases, in order to pass the title. In accordance with this
rule, it has been twice decided that it is necessary for the
collector to give such a bond as is required by statute. *Coit
v. Wells*, 2 Vt. R. 318. *Spear v. Ditty*, 8 Vt. R. 419.

2. It is objected, that in the record of the committee's ad-
vertisements, the name of Luther *W.* Brown appears, where-
as Luther *H.* Brown was appointed to that office, and the

LAMOILLE,
*August,*
1839.

Isaacs, Admr.
*v.*
Wiley *et al.*
and
Carpenter
*v.*
Sawyer *et al.*

LAMOILLE,
*August,*
1839.

Isaacs, Admr.
*v.*
Wiley *et al.*
and
Carpenter
*v.*
Sawyer *et al.*

court cannot know, from the record, that the same person acted, who was appointed. I do not find any case in which it has been decided that a "*middle letter*" is any necessary and essential part of the name. If one have two christian names, and be sued by the last only, it was held bad. *Arbouin* v. *Willoughby*, 4 Eng. C. L. 348, (1 Marshall, 477.) In this case the defendant's name was Hans William Willoughby, and he was sued by the name of Wiliam only. A similar doctrine is held in *Commonwealth* v. *Perkins*, 1 Pick. 388. But in the English courts, as far as I have been able to learn, (and I know it to be so in the courts of justice in the Canadian provinces,) the middle letter of a name is never permitted to be put upon the record. The names, be there ever so many, are written out at length. I have noticed men, educated in England and Scotland, where called upon to read, in public, names having initial letters ; and they only read those names which were written out or so abbreviated as to be intelligible, wholly omitting mere initials. In the case of *Reynolds* v. *Hankin*, 4 Barn. & Ald. 536 (6 Eng. C. L. 507) it is expressly decided that a special capias, issued against one by his initial letters only, as " F. W. Hankin", was irregular and the bail bond taken in the case was ordered to be delivered up to be cancelled. Same point ruled in the same manner in *Parker* v. *Bent*, (16 Eng. Com. Law, 75.) The law is, I apprehend, well settled in England, that mere initial letters are not to be regarded. Among the Romans their names were so few and uniform, that initial letters were well understood ; but it is not so at the present day. These initial letters are assumed arbitrarily by many without representing any name, and when they do, the name is known only to the person or his immediate family ; and the letter or letters are transposed, or omitted at pleasure, for mere sound sake, as the individual may prefer noise or, harmony, or, in the march of time, he may become indifferent to both. Hence, I consider the rule laid down in New York, that a middle letter is no part of the name, to be founded in good sense. It is there considered like the addition of " younger," or " 2d," used to distinguish one individual from another, whose names are the same, and which may be supplied by any other description, or wholly dispensed with when no other person of the same name resides in the same town, or vicinity. *Frank-*

LAMOILLE, August, 1839.

Isaacs, Admr. v. Wiley et al. and Carpenter v. Sawyer et al.

lin v. Talmadge, 5 Johns. R. 84. Roosevelt v. Gardiner, 2 Cowen's R. 463. In the present case, in the absence of all proof that two persons, bearing the same name, and distinguished by these initial letters, reside in that region, it certainly does require a very great stretch of credulity to admit the construction, that one man was appointed to this office, and that another intruded himself into his place, and assumed the burden of his duties. We think it more rational to treat the names as being the same, but capriciously varied to suit the taste or the whim of the individual.

But in construing a record, we may always resort to the obvious means in our power of arriving at the truth. From inspection, it is apparent that the record was *originally* made Luther H. Brown, and, that subsequently, the letter H. was so altered that it will now read either H. or W. This, doubtless, occurred after this manner. The record was originally made from the papers, and made, as it should have been, Luther H. Brown. But the town clerk, on comparing the record with the *formula* furnished for his guide, by those interested in the sale, found this name written with a W. instead of an H. Being in doubt which letter might be correct, he gave it this double aspect. Under all the circumstances of this case, to hold the record void for this defect, would be hypercritical indeed.

3. In regard to recording the advertisements of the collector and committee, all was said in the case of *Isaacs* v. *Shattuck* which this case requires, except that, in the present case, there were some verbal differences in the advertisements published in the different papers, and one of each form was recorded, the collector's advertisements in two papers being the same.

4. In the collector's advertisement in the Rutland Herald, the object for which the tax was granted, is thus stated: " for the purpose of making roads and building" ——. This is not an omission which affects the import of the notice. Literally, the phrase would read " making roads," or " making roads and building them," which is the same ; the first phrase manifestly implying all that could be expressed in the latter, if the word "bridges" were supplied. As the bridges are a portion of the road, the " making" of *roads, ex*

*vi termini*, implies *bridges*, also, the term "road," being generic, and " bridge " specific.

5. The record of unredeemed lands states the vendue to have been held on the 7th of June, 1834, when it was in fact held on the 7th of June, 1833. As this record refers to the sale by numerous other particulars, this error, in the date of the vendue, could not mislead any one. The court are all agreed that the title is not affected by this error. It is said somewhere to have been held that, unless the list of unredeemed lands was properly recorded in the proper office, the title of purchasers was thereby defeated. I can find no such decision reported. Upon what possible ground it could be decided that this, which was not required to be done till thirty days after the title of purchasers had, by express provisions of the statute, become perfected, should operate to divest that title, is wholly past my comprehension. The court now incline to consider that this cannot affect the title in any case. But it is not necessary to go farther than the facts in this case require.

6. It is said the collector has sold some lands in town for more than the tax and cost. This is not made to appear, and if it were so, it is difficult to perceive how it could affect the title in this case.

The question in regard to the allowance of the committee's account, not having been passed upon by the court below, cannot be revised here, upon the present bill of exceptions.

Judgments of the county court reversed, and both cases remanded for new trial.