### CHARLES W. PRENTISS v. CALVIN BLAKE ET ALS.

#### Deed.    Principal and Agent.

A father and son being both named D. F., the father purchased a piece of land, taking the deed to D. F., jr., describing him as of the town where they both resided, and himself executed notes for part of the purchase money and a mortgage of the land to secure the same, by the name of D. F., jr., and said nothing of his acting as agent for his son, and the grantor supposed the father was in fact the purchaser, that his name was D. F., jr,, and that he was deeding the land to the father.   Some of the evidence tended to prove that the son had authorized the father to buy the place in his, the son's name, and that he paid either directly or indirectly the whole price thereof.   Held, that it was a question of fact for the jury to decide whether the son was or was not the real principal and the purchaser of the land, and that if they found he was, then the title vested in him and not in the father.

EJECTMENT for the easterly half of lot No. 26, in Wheelock. The defendants pleaded the general issue, and the case was tried by jury at the December term, 1859, POLAND, J., presiding.   The plaintiff read in evidence the record of a judgment in his favor against David Felker recovered in Washington county court, March term, 1851, and an execution on the same judg-

ment and a set off thereon of the premises sued for; also, the record of a judgment in his favor against the said David Felker in an action of ejectment for the same premises, rendered at the June term, 1852, of the Caledonia county court.

The plaintiff then gave evidence tending to show that said David Felker in September, 1847, then a resident of Barton, applied to T. J. Cree of Wheelock, who then owned the premises in question, to purchase the same, and having agreed as to the price and terms of payment, said he would bring his wife to see the place, and if she was suited, complete the purchase. In a few days Felker came with his wife, and the trade was consummated. Felker paid Cree one hundred dollars, and gave notes to Cree for the balance, five hundred and twenty-five dollars, payable one hundred dollars a year, in semi-annual payments, Felker saying that he wished it so, for the purpose of meeting the payments from his pension, which he drew half-yearly. When the writings were executed, Felker took the deed from Cree to David Felker, jr., and executed the notes and a mortgage to secure the same, signing them David Felker, jr. Felker said nothing about purchasing for any person but himself and acted apparently on his own behalf, and Cree supposed he was purchasing for himself, and that his name was David Felker, jr. Said David Felker moved immediately on to said premises and resided thereon with his family for some three or four years, occupying and cultivating the same and consuming the products in his family as the apparent owner, and also paid the five notes to Cree which first fell due.

The defendants then read in evidence a deed of the premises in question from T. J. Cree to David Felker, jr., dated September 30, 1847; also a deed from David Felker, jr., to A. B. Matthewson, dated September 1, 1854, of the same premises; also, deeds from Matthewson of various subsequent dates of parcels of the same premises to each of the different defendants, and it was admitted that each of the defendants was in possession of some part of the demanded premises, claiming from Matthewson, at the time of the commencement of the plaintiff's suit.

It was conceded, also, that when David Felker, jr., deeded to Matthewson, he gave Matthewson a bond of indemnity against

the plaintiff's levy, and that all the defendants had knowledge of the plaintiff's claim of title when they purchased. This suit was defended by David Felker, jr., under whom the defendants claim, and he gave evidence tending to prove that his father, the said David Felker, in the year 1847, had become entirely destitute of property, and had no home or place to live ; that he had a wife and several minor children ; that in the fall of 1847 he applied to his son the said David Felker, jr., (who then carried on the trade of a blacksmith at Barton,) to purchase a small farm to make a home for himself and his family ; that said David, jr., replied that he was too busily engaged in his shop, that he could not spend the time to go and find a place, but that if said David would go and look up a place that would suit him, the said David jr. would purchase it to make a home for the family ; that David sen'r went to Wheelock and saw the place belonging to Cree, and came back and informed said David jr. in reference to the place and terms of payment, and a day was fixed for both to go down and have the papers executed, but on that day said David jr. was so busily engaged in his shop that he could not leave, and that he consulted a lawyer to know if his father could not do the business as his agent. and was informed that he could ; that he accordingly furnished his father the one hundred dollars to make the cash payment to Cree, and sent him to complete the purchase for him ; that he told David sen. to have the notes made so payable that he could take them up with his pension money and bring them to him so that he could pay them to him, and save himself any trouble about them ; that David sen'r while he lived on the place did make payment of the five notes first due out of his pension money, and brought them to David jr. who paid over the amount of said five notes to him ; that about 1850 David sen'r left his family and the place, and that the residue of said notes were paid by David jr. to Cree with his own money.

David jr. testified that he supposed David sen'r in making the purchase informed said Cree that he was acting as agent for David jr., and had no knowledge to the contrary, and that when David sen'r returned from Wheelock he brought and delivered the deed from Cree to David jr.; that he supposed his father exe-

cuted the notes in his, David jr.'s, name, but did not know he gave any mortgage at all.

The plaintiff claimed and requested the court to charge the jury that if David Felker, sen'r, made the purchase of the premises of Cree in such a manner that Cree supposed he purchased for himself, and that he was the person to whom he was conveying the premises, then the title vested in him, and the plaintiff would be entitled to recover, though in fact David Felker, sen'r, was acting as the agent and on behalf of David Felker, jr. The court declined so to charge, but did charge the jury that the deed being to David Felker, jr., upon its face was a conveyance to the son and not to the father, but that the word junior added to a name is not regarded in law as any part of the name itself, and that evidence was admissible to show to which of the two persons of the same name a conveyance was in fact made ; that the plaintiff's evidence that the sale was in fact made to David Felker, sen'r, and the notes and mortgage deed executed by him apparently acting on his own behalf, and without disclosing that he was acting as agent of David Felker, jr., would establish *prima facie* that the sale and conveyance were to David Felker, sen'r ; but that if it was established to the satisfaction of the jury that he was really employed by David Felker, jr., as his agent, to make the purchase for him, that David jr. furnished the money to pay for the place, and that David sen'r in fact was acting in the behalf of David jr. in taking the deed, then the conveyance was to David jr., though his agency was not disclosed to Cree, and Cree supposed that David sen'r was the man to whom he was making the conveyance ; and that after the evidence of the plaintiff above stated the burden of showing the agency of David Felker, sen'r, in the transaction was upon the defendant. The jury returned a verdict for the defendants. The plaintiff excepted to the charge as above detailed, and to the refusal to charge as requested.

*John H. Prentiss*, for the plaintiff.

*David T. Corbin*, for the defendants.

Prentiss *v.* Blake et als.

Kellogg, J.  This is an action of ejectment for land in Wheelock, to which the plaintiff claimed title by virtue of a levy and set off on an execution in his favor against David Felker, and of a former recovery in an action of ejectment for the same premises against the same David Felker.  The defendants respectively claimed title to parcels of the same premises under David Felker, jr., the son of said David Felker, by intermediate conveyances which transferred his estate therein.  It was conceded by both parties that the land was originally owned by T. J. Cree, and that it was conveyed by said Cree on the 30th September, 1847, by a deed, to a grantee who is named therein as " *David Felker, jr., of Barton, in Orleans county,*" and it appeared that the two Felkers, father and son, at that time both resided in Barton.  The plaintiff's evidence tended to show that the father made the bargain with Cree for the purchase of the land, and agreed with him upon the price, and the terms of payment, and paid to him one hundred dollars at the time of the execution of the deed, and executed to him several promissory notes for the balance of the purchase money, and also a mortgage to secure the payment of the same, signing both the notes and the mortgage with the name of " *David Felker, jr.,*" and said nothing about purchasing the land for any one but himself, and acted throughout the transaction apparently in his own behalf; that Cree supposed that he was purchasing for himself, and that his name was in fact David Felker, jr.; and that the said Felker, the father, moved on to said land immediately after said purchase, and occupied the same for several years as the apparent owner, and also that he paid to Cree several of the said promissory notes which first became due.  It was conceded on the part of the defendants that they each had knowledge of the plaintiff's claim of title when they purchased their respective parcels of the land in controversy, and that David Felker, jr., the son, when he conveyed the land to their grantor, gave to him a bond of indemnity against the plaintiff's levy; and this suit was defended by said David Felker, jr., the son.  The defence set up was that the said David Felker, the father, in making the purchase of the land of Cree, and in the negotiations connected

therewith, and in taking the deed from Cree, and in making the payments which he made to Cree, was in fact the agent of his son ; that the money so paid was the money of the son and not of the father ; and that the son paid the balance due upon the notes executed for the purchase money.   Under the charge of the court, the jury found, from the evidence in the case, that the father was in fact employed by the son as his agent to make the purchase for him of Cree ; that the son furnished the money to pay for the place ; and that the father was in fact acting in behalf of the son in taking the deed, though his agency was not disclosed to Cree, and Cree supposed that the father was the man to whom he was making the conveyance ; and the jury returned a verdict for the defendant.   The plaintiff requested the court to charge the jury that if the father made the purchase of the land of Cree in such a manner that Cree supposed that he purchased it for himself, and that he was the person to whom he was conveying the premises, then the title vested in him, and the plaintiff would be entitled to recover, though in fact the father was acting as the agent and on behalf of the son ; but the court declined so to charge.   The plaintiff's grounds of exception to the instructions given to the jury are in substance the same which are applicable to the omission of the court to recognize this proposition,—the exceptions taken by the plaintiff being applicable to the charge, and the omission to charge as requested, in this particular.

The case presents facts of a peculiarly novel and anomalous character, but the real question is, to whom did the legal title pass under the deed executed by Cree ?   The addition of "junior" is in law no part of a person's name, but it is used as merely descriptive of the person, and is assumed, applied, and discarded at will.   *Brainard* v. *Stilphin et al.,* 6 Vt. 9 ;   *Blake et al.* v. *Tucker,* 12 Vt. 39 ;   *Isaacs* v. *Willey et al.,* 12 Vt. 677. Its use in this deed as an addition to the name of David Felker as the grantee is not therefore necessarily conclusive as a description or designation of the person to whom the title was transferred, if two or more persons will answer the same and the other matters of description in the deed.   The addition is at the best but presumptive evidence that of two persons bearing the

31

same name the person thus designated is the younger.  In this deed the grantee is named as "*David Felke,*, *jr.*, *of Barton, in Orleans county,*" and it appears that there were two persons of the name of David Felker who resided in Barton at the time of the execution of this deed, one of whom was the father of the other.  The deed itself, consequently, does not conclusively determine which of these two persons answers the descrption of the grantee, though it furnishes a presumption by the use of the word *junior*, added to the name of the grantee, that this addition was intended to designate the younger of the two ; but this is a presumption which is subject to be controlled by evidence *aliunde*, because in fact the father might have used, or been designated by, this addition.  Whenever the description of the grantee, as contained in the deed, is equally applicable to two or more persons, the aid of extrinsic evidence must be sought to determine which of them was in fact the grantee, and this would be a question of personal identity.  The plaintiff claims that this question must be determined by the *intention* of the grantor; and the defendants insist that the *actual purchaser* should be considered as the grantee intended, if he will answer the description of the grantee named in the deed.

An agent may be authorized by parol to treat for and buy an estate, or to act upon a contract or sale of premises ; and, though he purchase in his own name, yet the fact of the agency so as to charge the principal may be made out by parol evidence, though the principal was not known to the other contracting party at the time the agreement was made, and the agent acted as, and appeared to be, the principal.  Sugden on Vendors and Purchasers, (13th Ed.,) p. 118 ;  Chitty on Contracts, (10th Amer. Ed.,) pp 222, 240.  The rule is equally applicable to contracts for the sale of real and personal property, the contract of the agent being in law the contract of the principal.  There is an exception in the case of a *deed*, which cannot be executed by an agent so as to bind his principal, unless the authority to execute the instrument be conveyed by a specialty.  In the large class of commercial transactions conducted through the agency of factors and brokers, the cases are very frequent in which the principal is personally liable upon any contract of his agent, if made

within the scope of the authority given, although the agent made the bargain in his own name, and appeared at the same time to act for himself, so that in fact the principal could not have been trusted, or his credit or responsibility regarded or required, at the time of the bargain. The rights and liabilities arising from the contract of sale are attached to the real principals when they are discovered or disclosed. In this case, then, Cree would have been entitled to an action for the price of the premises sold against the real principal, although the contract was made by an agent who appeared at the time to act for himself, so that Cree could not have supposed that he was dealing with him otherwise than with a principal, and was in fact ignorant of his real character. If the truth of the transaction would thus affect the remedy of Cree against the real principal, it is difficult to find any ground upon which we could deny to such principal the benefit of a contract upon which he is liable. The intention of Cree in respect to the grantee should not therefore be regarded as necessarily determining the question of personal identity, when it appears, as it does in this case, that the real principal in making the purchase answers the description of the grantee given in the deed. The case is not like that of the right or title to an office in which the intention of the elector may be material, but, even in such cases, the intention of the voter is to be inferred not from evidence given by him of the mental purpose with which he deposited his ballot, or his notions of the legal effect of what is contained or omitted, but by a reasonable construction of his acts. *The People and Hommell* v. *Saxton,* 22 New York, 309. Whatever may have been the right of Cree, arising from the conduct of the elder David Felker in personating his son by executing notes and a mortgage in his name, we do not think that third persons, who then had no connection with, or interest in, the transaction, are entitled to assume the position of Cree, or stand upon his right, against the equity of a real principal who furnished the money to pay the consideration for the conveyance.

We regard the only important question which the case presents as being, which of the two Felkers, the elder or the younger, sustained the character of the real principal in the transaction

with Cree; and this was a question of fact which, in our opinion, was submitted under proper instructions to the jury. Our conclusions upon the evidence in the case might have been different from those established by the verdict, but the finding of the jury on an issue of fact properly submitted is not subject to revision in this court. The judgment of the county court in favor of the defendant is affirmed.