### Buck Windom v. The State.

No. 2609. Decided January 28, 1903.

Motion for Rehearing Decided February 25, 1903.

1.—Admission of Evidence, Not in Rebuttal, Before Conclusion of Argument.

When necessary for the administration of justice, the statute authorizes the admission of testimony for either side before the conclusion of the argument, although such testimony may not be in rebuttal of other testimony introduced.

2.—Horse Theft—Charge.

On a trial for horse theft where defendant claimed that he had received the horse from a party who said he had borrowed it from the owner, the charge of the court was correct which instructed the jury that defendant

would not be guilty of the theft if he received the horse under the belief that it had been borrowed by the party from whom he received it.

**3.—Same.**

On a trial for horse theft, a charge was correct which told the jury to acquit if the defendant took the horse simply to ride to another county, and with no intention to deprive the owner of it—this being an issue raised by defendant in his own testimony.

### ON REHEARING.

**4.—Horse Theft—Ownership—Charge—Practice on Appeal.**

On a trial for horse theft, the failure of the court to apply the law to the issue of ownership can not be availed of, for the first time, on the appeal, but should have been taken advantage of by bill of exceptions, or on motion for new trial in the lower court.

**5.—Same—Allegation of Ownership.**

Where an indictment for horse theft alleged part ownership in S. R., and S. R. was also the name of the father of this alleged owner, held, that the ownership of the father would not be presumed simply because the alleged owner was not designated as Sr. "Junior," or "Jr." To omit to add such application or cognomen is harmless error both in civil and criminal proceedings.

**6.—Same—Verdict—Evidence Sufficient.**

A verdict of conviction of horse theft will not be disturbed where the evidence adduced is sufficient to show a fraudulent taking.

Appeal from the District Court of Johnson. Tried below before Hon. W. Poindexter.

Appeal from a conviction of horse theft; penalty, three years imprisonment in the penitentiary.

The essential facts are sufficiently stated in the two opinions of the court.

*D. W. Odell* and *Brown & Bledsoe,* for appellant, on motion for rehearing.—Our contention is that the error of the court in failing to apply the law to the issue of ownership so prominent in the testimony apparent of record is fundamental and will require a reversal of the case. But if it be conceded that under article 723, Code of Criminal Procedure, it is too late to raise the question in this court, then our contention is that the evidence is insufficient to support the verdict. This issue was presented in the lower court and in this court, and aside from this we take it that the insufficiency of the evidence to support the verdict may be raised at any time, and also that any averment in the indictment essential to a conviction must be proved, as alleged variance sometimes is so closely akin to a want of affirmative proof that the issue may be raised either way by suggesting variance or that the verdict is contrary to the law or evidence. Our contention is that the verdict on the issue of ownership and possession is both contrary to the law and the evidence.

It affirmatively appears from the record that Savie Richardson, Sr., was alive at the time of the trial and residing near Cleburne, the county seat; that the horse in question was taken from his premises and his barn; that Savie Richardson, Jr., was a minor under the age of 19 years. The minor son is himself presumed by law to be under the

actual control of his father; of course, his property is. If the son had instituted suit for the property (the horse), it must have been abated when the record disclosed his minority. The law would not have permitted him to prosecute the suit in the absence of a guardian or next friend on the theory, of course, that a sound public policy demanded and required an adult to supervise and look after the property rights of the infant and enforce his rights by law. The infant can not contract except for necessaries. If he had traded the horse the father could revoke and rescind the trade. The father can control and direct the services of the minor; he can enforce compensation in his own name for the minor's services. Therefore he can use his property acquired during minority for his services. This horse was purchased by the boys, taken to the father's premises and left there, from this record, presumably under his control, care, management and direction, certainly in his possession. It was taken from his possession, not from the possession of the minor. This court has recently held that where the owner is alive his want of consent must affirmatively appear in the record, and circumstances, however strong they may be, will not be sufficient to show this material allegation. The father was within a mile and a half of the courthouse; he is not produced. Appellant believed the horse belonged to Richardson, Sr. This is his first statement to Thompson. The law presumes that Richardson, Sr., was the owner alleged in the indictment. In Quill v. Bradley (a Massachusetts case), the following language is used: "It seems that where father and son of the same name reside in the same town the omission of junior in a writ against the son is good cause of abatement." We have not the authority at hand, but the soundness of the rule is evident from a statement of it. The father is entitled to the name without any description because he acquired it first; he has been known by it longest in the community where both lived. It is invariably the youngest man who is designated by some descriptive term. This seems to be the rule and the reason for the rule, without reference to minority. Applying the rules heretofore referred to, to minority and infancy, it must be kept in mind that the varying ages of infants is not important. The law prescribes one rule by which the property rights of infants in fact as well as in name are to be affected and protected. To illustrate: The writer is the possessor of a boy about one year old who bears his name. The earthly possessions of the aforesaid boy consist of one dog. It would be ridiculous and absurd in event of the dog's theft to allege ownership in the child, or in the absence of some descriptive term to say that the law would not presume ownership and possession in the father, and that the pleader did not so intend when putting the accused on notice of the offense with which he was charged. To further illustrate, suppose in the case at bar the State had produced as a witness Richardson, Sr., who had testified that the property, while acquired by his minor son, was in fact in his possession and control on his premises and in his barn, all of which appears from the undisputed evidence. It could not.

have been logically or consistently urged that ownership and possession was not properly laid and want of consent affirmatively shown. Possession of joint owners may be in both at the same time, but not in father and minor son, or master and servant. So, to summarize, we insist that the law presumes Richardson, Sr., to have been owner named in the indictmenat.

The facts show he had possession and fail to show his want of consent. He lived within a mile and a half of the courthouse, wherefore the verdict is contrary both to the law and the evidence. On the other branch of this issue we call attention to White's Penal Code, section 1505, page 605, where the rule is stated and the authorities collated on the subject of fraudulent intent in this wise: "The fraudulent intent of the taking is the essential ingredient, the very gist of the crime of theft, and this intent must exist at the very time of the taking, for no subsequent felonious taking will render the previous taking felonious. A fraudulent taking of the property of another embraces this idea, that the taker knew it was not his own, and also that it was done to deprive the owner of it. This is usually evidenced by its being done in such a manner and under such circumstances as to avoid detection or responsibility to the true owner. The manner and circumstances under which the property was taken, held, used and spoken of by the defendant, and whether or not there was upon his part any attempt at concealment, are circumstances to be considered and weighed in determining with what intent the property was taken by the defendant." Measured by these humane rules, the testimony in this case is too uncertain and doubtful to authorize a verdict of guilty.

The appellant made no possible effort at concealment; the purposes for which he took the horse is undisputed. He held, used and spoke of the horse as belonging to another; he made no effort to dispose of the horse by sale or exchange; he was left in the county where appellant had lived for fifteen years and was well known, in a pasture and within twenty miles of the scene of the taking. That there was to be no further effort to use the horse in making his escape is evident from it being turned loose in a pasture. He did not have the horse when arrested, and this is convincing on his having abandoned it.

The testimony of the witness, Bud Young, is reasonable, natural and probably true, and although the appellant may have lied as to whether he or "Black and Shine" originally took the horse, it occurs to us that this should not deprive him of all the reason and reasonable conclusion to be drawn from the whole testimony.

*Howard Martin,* Assistant Attorney-General, for the State

DAVIDSON, PRESIDING JUDGE.—This conviction was for horse theft, the penalty being three years in the penitentiary.

The witness George Perry was permitted to testify to facts criminative in their nature, after both sides had closed their testimony; the

objection urged being that it was not in rebuttal. The court explains the bill by stating that when the cause was called for trial State's counsel informed the court that the old negro, George Perry, was absent in Bosque County, sick, and perhaps unable to attend court. The court informed counsel that, if his presence could be procured before the close of the case, he would be permitted to testify, and as soon as the witness came in he was used as a witness. When necessary to the administration of justice, testimony may be admitted for either side before the conclusion of the argument. The statute authorizing this has been upheld by an unbroken line of decisions. Briefly stated, the evidence disclosed that appellant was a convict upon the county farm, and made his escape. During that night the horse in question was taken from the lot where placed by the owner, carried out through the field, and was ridden into Bosque County by appellant. Another county convict escaped at the same time—a negro, going under the euphonious name of "Black and Shine." Appellant claims that "Black and Shine" informed him that he had a friend from whom he could borrow a horse, on which they could ride out of the county; that "Black and Shine" disappeared, and came back with a horse, and they went together some distance, and parted company, appellant riding the horse into Bosque County, to the house of a friend, and the next day turned him into a pasture, with instructions that he be returned to the alleged owner, or the father of the alleged owner. The evidence further discloses that "Black and Shine" wore a very large shoe; that appellant wore about a No. 6 or 7; and that the track of the man who took the horse from the lot, and led him through the field, was a No. 6 or 7. Appellant also claimed that he simply rode the horse for the purpose of making his escape, with the intent to return or have him returned to the owner; in other words, that he was simply stealing a ride, and not the horse.

Various objections are urged to the charge of the court, especially that portion of it which informs the jury, if they should believe from the evidence that another person borrowed the horse in question from the owner, and placed it in possession of defendant, or if they entertained a reasonable doubt whether defendant's connection with the horse arose in this manner, they should acquit. This is objected to because it limited the jury to the consideration of appellant's belief of the fact. This was rather favorable to defendant, because it was not a fact that the horse was borrowed by the negro "Black and Shine," and the court would have erred if he had confined the jury to ·a belief on their part that the fact did exist. The court was, therefore, correct in instructing the jury, if defendant received the horse under the belief that it was borrowed by "Black and Shine," he would not be guilty of theft. This was appellant's contention. This was his statement, and the issue was submitted upon the defendant's statement, as one of his theories.

The court also instructed the jury to the effect that, if defendant took the horse, and did so with the intention not to deprive the owner of the value of it, but simply to ride to Bosque County, or there was a reason-

able doubt of that proposition, they would acquit. This was another contention of appellant, made so by his own testimony; and the court clearly submits it favorably to defendant.

We have carefully examined this record, and do not believe there was any error committed. Every issue presented by the testimony, as we understand the facts, was clearly, pertinently, and even favorably submitted by the charge. While appellant raised the question of the horse having been gotten by "Black and Shine," so that he and "Black and Shine" might ride away from the officers; and the further theory that he took the horse for the purpose of riding to Bosque County to elude the officers—yet the other facts do not sustain this.

The judgment is affirmed.

*Affirmed.*

### ON REHEARING.

DAVIDSON, PRESIDING JUDGE.—At a former day of this term the judgment herein was affirmed. It is now contended the court committed error in failing to apply the law to the issue of ownership, and that this is apparent of record, and fundamental in its nature, which would require a reversal. This might be answered by the decisions construing article 723, Code of Criminal Procedure, to the effect that it is too late to suggest such error for the first time on appeal. It should have been taken advantage of by bill of exceptions or in motion for new trial in the court below. But, independent of these decisions and of this article, we do not believe there is any merit in the question suggested. This matter comes in this way: The indictment alleged the ownership to be in Savie Richardson and John Richardson. The evidence discloses that there were two parties, father and son, by the name of Savie Richardson. The contention is that, where such is the case, the law would presume the ownership to be in the father, and not the son. If this be correct, it is but a presumption which could be overcome by proof. The word "Junior," or "Jr.," or words of similar import, are ordinarily mere matters of description, and form no part of a person's legal name, and to omit or add such appellation or cognomen is harmless error, both in civil and criminal proceeding. Geraghty v. State, 110 Ind., 103; Ross v. State, 116 Ind., 495; People v. Cook, 14 Barb., 259; Padgett v. Lawrence, 10 Paige, 170; Com. v. Perkins, 1 Pick., 388; Cobb v. Lucas, 15 Pick., 7; Cargill v. Taylor, 10 Mass., 203; State v. Grant, 22 Me., 171; Coit v. Starkweather, 8 Conn., 293; Fleet v. Youngs, 11 Wend., 522; Prentiss v. Blake, 34 Vt., 465; Keith v. Ware, 6 Vt., 680; Blake v. Tucker, 12 Vt., 39; Headley v. Shaw, 39 Ill., 354; State v. Weare, 38 N. H., 314; Commonwealth v. Parmenter, 101 Mass., 211. In Simpson v. Dix, 131 Mass., 179, it was held that, where a conveyance is executed to the grantee of a certain name, and there are two persons, father and son, of that name, no presumption will be indulged that the conveyance is to the father, and evidence is admissible to show who in fact was in-

tended as the grantee. The evidence in this case further shows that the father and son lived upon the same place; that the son lived with the father; that the horse was kept in the barn on the place, which is owned by the father. And it was further shown that the horse in question was in fact the property of the two sons, Savie and John Richardson, and that the father had no interest in the animal. Even had objection been urged upon the trial below, it would not have been well taken under the authorities cited.

The only remaining question urged on rehearing is the supposed insufficiency of the evidence. There were several theories advanced by appellant in reference to his taking the horse to ride away from the officers and escape further serving his time on the county farm in obedience to the judgment of the court punishing him for a misdemeanor. However, there is evidence refuting these theories, and showing a fraudulent taking. Under this state of facts or condition of the record, this court would not be authorized in disturbing the verdict.

The motion for rehearing is overruled.

*Motion overruled.*