**Charles Ellisworth YEAGER a/k/a
Charles Ellsworth Yeager,
Jr., Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–85–097–CR.**

Court of Appeals of Texas,
Fort Worth.

May 14, 1986.

Neal, Neal, Richie & Hill and John A. Neal, Graham, for appellant.

Timothy D. Eyssen, Dist. Atty., Graham, for appellee.

Before FENDER, C.J., and HOPKINS and ASHWORTH (Retired, Sitting by Assignment), JJ.

## OPINION

HOPKINS, Justice.

Appellant was convicted by a jury of the offense of "felon in possession of a firearm", TEX.PENAL CODE ANN. sec. 46.05 (Vernon 1974), and was sentenced to three years confinement in the Texas Department of Corrections, and a fine of $2,500.

The judgment is reversed and remanded.

In his first ground of error appellant asserts that the trial court erred in denying his motion to dismiss the indictment under the Speedy Trial Act, TEX.CODE CRIM. PROC.ANN. art. 32A.02 (Vernon Supp. 1986). The pertinent provisions of the Act are:

Section 1. A court shall grant a motion to set aside an indictment, information, or complaint if the state is not ready for trial within:

(1) 120 days of the commencement of a criminal action if the defendant is accused of a felony; ...

\* \* \* \* \* \*

Sec. 2 (a) Except as provided in Subsections (b) and (c) of this section, a criminal action commences for purposes of this article when an indictment, information, or complaint against the defendant is filed in court, unless prior to the filing the defendant is either detained in custody or released on bail or personal bond to answer for the same offense or any other offense arising out of the same transaction, in which event the criminal action commences when he is arrested....

\* \* \* \* \* \*

Sec. 4....

(6) a reasonable period of delay resulting from a continuance granted at the request of the state if the continuance is granted:

(A) because of the unavailability of evidence that is material to the state's case, if the state has exercised due diligence to obtain the evidence and there are reasonable grounds to believe the evidence will be available within a reasonable time; or ...

\* \* \* \* \* \*

(10) any other reasonable period of delay that is justified by exceptional circumstances.

Appellant was arrested for the offense on August 7, 1984 and was tried February 25, 1985. In the interim there were several causes for delay. Appellant executed a waiver of speedy trial and subsequently filed motions to advance his case on the docket. The motions to advance were granted. Several attorneys were appointed to represent appellant but for good cause shown were subsequently discharged. On two occasions, the State requested and received continuances due to one of its witnesses' hospital confinement. A computation of time under the Speedy Trial Act reveals that if the time the State's witness was unavailable is excluded, there is no violation of the Act. Appellant contends such time should not be excluded from the computation because in addition to the disabled witness, there was another officer available who could give substantially the same testimony of the circumstances of the arrest as the disabled officer. The State contends it should have the right to have both witnesses available to testify and should be allowed to present its case through whichever witness it prefers.

A review of the record reveals that the absent witness, Dees, was 1) the "primary" officer responding to the call relative to the offense, 2) had talked with the complaining witness prior to being dispatched to the scene, 3) was the officer who placed the appellant under arrest, and 4) was the officer to whom the appellant made incriminating statements admitting he had a gun. Although another officer (Ferguson) viewed the gun in appellant's pickup and seized same, he could not testify to the above enumerated matters to which Dees

was a party. In particular, Ferguson did not hear Dees' conversation with appellant, in which appellant admitted that he had a gun in his possession. The importance of appellant's admission became apparent when two friends of the appellant testified that they had left the pistol in appellant's pickup. Their testimony, which showed that they had borrowed the pickup, gone target shooting, and returned the pickup to appellant within a week of his arrest, raised an issue as to whether appellant knew that the gun was in the pickup. Thus, Officer Dees' testimony was important to the State's case.

Dees testified that he had a stroke the latter part of September, 1984, and did not return to full-time duty until the latter part of January, 1985. He further testified that during that period, he was in and out of the hospital six times, and that each admission was for approximately one week.

■ We find that the witness's incapacitation due to a stroke constituted "exceptional circumstances" within the meaning of art. 32A.02, sec. 4(10). We further hold that the time allotted the State by the continuances is properly excluded under art. 32A.02, sec. 4(6)(A) on the basis of the unavailability of the material witness. *See Canada v. State,* 660 S.W.2d 528 (Tex. Crim.App.1983).

Appellant's first ground of error is overruled.

Appellant's second through fifth grounds of error all relate, at least in part, to the differences between the indictment and the documents contained in the pen packet introduced into evidence to prove that appellant was a convicted felon. The indictment reads, in pertinent part:

CHARLES ELL*I*SWORTH YEAGER ... did ... intentionally and knowingly possess a firearm, to-wit: a handgun away from the premises where he lived; and prior to the commission of said act, the said CHARLES ELL*I*SWORTH YEAGER, was duly and legally convicted of the felony offense of robbery, being a felony involving an act of violence and threatened violence to a person, to-wit: that on the 20th day of March, 1974, in cause no.

3406, of the District Court of Hutchison County, Texas, in a case on the docket of said Court, and entitled the State of Texas vs. CHARLES ELL*I*SWORTH YEAGER.... [Emphasis added.]

The judgment, sentence and all other documents in the "pen packet" show that the person convicted of robbery on March 20, 1974 in cause number 3406 was "Charles Ellsworth Yeager, *Jr.*" and that said person was convicted in the District Court of "Hutchi*n*son" County, Texas. (Emphasis added.) Thus, there are three differences between the names and counties alleged in the indictment and the "pen packet", which are: (1) the defendant's middle name is spelled "Ell*i*sworth" in all places in the indictment, and the defendant's middle name is spelled "Ellsworth" in the pen packet; (2) the defendant in the pen packet has "Jr." after his name, in the indictment there is no "Jr." after the defendant's name; (3) in the indictment the county of the previous conviction is spelled "Hutchison," in the pen packet the county of previous conviction is shown to be spelled "Hutchi*n*son". (Emphasis added.)

Appellant's second, third, and fifth grounds of error are as follows:

(2) The trial court erred in refusing to grant appellant's request for a jury charge on the lesser included offense of unlawfully carrying a weapon because due to the above mentioned "variances," an issue was raised that appellant, if guilty, was guilty only of the lesser offense of "unlawfully carrying a weapon." (3) The trial court erred in denying appellant's Motion to Quash, Set Aside and Dismiss the Indictment, as there existed a "fatal variance", between the proof and indictment. Furthermore, due to this variance, the evidence was insufficient to prove appellant was the person referred to in the pen packet. (5) The court erred in its charge to the jury, by putting "Hutchison" County as the previous county of conviction and Charles "Ell*i*sworth" Yeager (no "Jr.") as the name of the convicted defendant, and thereby failed to apply the law to the facts in this case.

■ In regard to these grounds of error, we conclude that "Ellisworth" and "Ellsworth" are idem sonans and that "Hutchinson" and "Hutchison" are idem sonans. *See Martin v. State,* 541 S.W.2d 605 (Tex. Crim.App.1976). Therefore, although the court should have charged the jury to the effect that they must find that "Charles Ellsworth Yeager, Jr." was the same person as "Charles Ellisworth Yeager" and that "Hutchinson" County was the same county as "Hutchison" County before they could find appellant guilty, we find that the failure to so charge was harmless.

■ It is well settled that the designation "Jr." constitutes no part of a person's legal name. *Smith v. State,* 435 S.W.2d 526, 527 (Tex.Crim.App.1969); *Windom v. State,* 44 Tex.Cr.R. 514, 72 S.W. 193, 194 (1903). On the other hand, "Jr." is "usually adopted to designate the son where the father bears the same Christian name as well as the family name." *Padgett v. Lawrence,* 10 Paige 170, 177 (N.Y.Ch.1843). "Jr." is used to describe and designate the person; as his residence is sometimes used for the same purpose. *Cobb v. Lucas,* 15 Pick. 7, 9 (Mass.1833).

We need not decide, however, whether the inclusion of the designation "Jr." after the name of the person described in the pen packet was some evidence that appellant was not the person previously convicted, as we reverse this case on other grounds. If, on retrial, the court charges the jury on the law as applied to the facts shown in the pen packet and on the lesser included offense, if requested by appellant, the differences in names should no longer present a problem.

Appellant's grounds of error two, three and five are overruled.

In his fourth ground of error, appellant argues that the trial court erred in admitting appellant's alleged "Pen Pack," over objection of counsel due to the "fatal variance" between the indictment and proof, and because there was no proper proof that appellant and the person in the "Pen Pack" were one and the same.

At the conclusion of the testimony which tended to show that appellant had a pistol in his possession away from his home, the State attempted to prove that appellant had been previously convicted of robbery. To accomplish this end, the prosecutor simply offered the pen packet from the Texas Department of Corrections into evidence. Appellant immediately objected to the introduction of the packet, stating that the proper predicate had not been laid for its admission, because "[i]t's not shown that the person contained in these papers is one and the same as the defendant." He furthermore objected to each of the documents in the pen packet due to the differences between appellant's name and the name on the documents, and the differences between the indictment and proof of the county of conviction. The court overruled all of appellant's objections and the pen packet was given to the jury.

■ While certified copies of judgments and sentences are clearly admissible if an appellant's identity is established, their mere introduction standing alone is not sufficient to identify the appellant as the person formerly convicted. *Vessels v. State,* 432 S.W.2d 108, 116 (Tex.Crim.App. 1968). In light of the objection, the State's failure to go further and show by independent testimony that appellant was the identical person convicted under the judgment and sentence constitutes reversible error. *See id.* at 117.

The pen packet records show that, after being convicted of robbery in cause number 3406 in the 84th District Court of "Hutchinson" County, "Charles Ellsworth Yeager, Jr." arrived at the Texas Department of Corrections on April 25, 1974. According to these documents "Yeager, Jr." was then thirty-one years old, having been born in Ohio, West Virginia on October 7, 1942; he had a ruddy complexion, brown hair and blue eyes; he was five feet, eight inches tall; and he weighed 153 pounds. The packet further describes a number of scars and tattoos, but only the small cut scar inside the palm of his left hand and on his left wrist would be detectible if the person wore a long-sleeve shirt or coat. The large cut scars on the right forearm may have been visible if the person wore a short-

sleeve shirt. There is nothing in the record indicating how appellant was dressed at trial. Also included in the packet were three sets of fingerprints and two photographs of "Yeager Jr." on August 24, 1976. As the instant case went to trial in February of 1985, the description in the pen packet was eleven years old, and the photographs were eight and one-half years old.

The State offered no evidence of appellant's fingerprints, age, birth date, body tatoos and scars or place of birth. Furthermore, there is no evidence elsewhere in the record of these matters. No testimony was offered by anyone to the effect they knew appellant, had examined the information in the pen packet and were of the opinion the person named and the appellant were one and the same person.

In *Daniel v. State*, 585 S.W.2d 688 (Tex. Crim.App.1979) the Court of Criminal Appeals considered a similar ground of error. The Court set forth the following methods of proving identity as a predicate to admission of evidence of the prior conviction:

(1) Testimony of a witness who personally knows the defendant and the fact of his prior conviction and identifies him; ... (2) Stipulation or judicial admission of the defendant that he has been so convicted; ... (3) Introduction of certified copies of the judgment and sentence and record of the Texas Department of Corrections or a county jail *including* fingerprints of the accused supported by expert testimony identifying them with known prints of the defendant ....

*Id.* at 690 (emphasis in original).

The Court in *Daniel* also mentioned a fourth method of proving identity:

(4) Comparison by the fact finder of a record of conviction which contains photographs and a detailed physical description of the named person, with the appearance of the defendant, present in court. *Gollin v. State*, 554 S.W.2d 683 (Tex.Cr.App.1977).

*Id.* at 691.

In *Daniel*, 585 S.W.2d at 689–90, the State offered expert testimony identifying appellant's fingerprints and matching them

with fingerprints on a Dallas County Jail card. The Court of Criminal Appeals reasoned that the jail card had not been adequately linked to the previous Louisiana conviction which the State introduced at the punishment phase. Thus, in the absence of independent testimony linking the defendant and the Louisiana conviction, the Court held the documents showing the Louisiana conviction inadmissible. *Id.* at 692.

Both *Daniel* and *Gollin* are cited in the State's brief as authorizing the admission of "Yeager, Jr.'s" pen packet.

In a recent case, the Court of Criminal Appeals accurately summarized the evidence in *Gollin* as follows:

[T]he pen packet, inter alia, included two mug shots (front and side views) and a physical description which reflected the height, weight, complexion, eyes, hair, race, date of birth of the inmate and noted he had a cut scar on the right cheek. Although there was no fingerprint testimony, a deputy sheriff testified he was acquainted with Gollin and had examined the photographs and physical description in the pen packet and expressed the opinion the person referred to in the pen packet was Gollin, who was present in the courtroom. Gollin's confession, admitted into evidence, reflected his race, date and place of birth which corresponded to the description in the pen packet.

*Littles v. State*, No. 301–83, at p. 5 (Tex. Crim. App., Sept. 19, 1984, reh'g pending) (not yet reported). The Court in *Littles* held that a pen packet, "sans any reference to fingerprints or physical description", *id.* at p. 2 (slip opinion), although containing photos and certified copies of the judgment and sentence, was insufficient to show the appellant was the same person previously convicted. *Id.* at p. 6 (slip opinion).

This Court in *Carey v. State*, 677 S.W.2d 821 (Tex.App.—Fort Worth 1984, no pet.), held that it was error to admit a pen packet containing no fingerprints but which contained photographs of appellant, "less than four years old and of good photographic

quality which the jury could compare with appellant." *Id.* at 826.

The proof in *Gollin* contained two important elements not present in the case at bar: (1) independent testimony that the person referred to in the pen packet was the defendant on trial, and (2) in defendant's confession he admitted he was a negro male, born August 16, 1929 in Marion, Arkansas, which corresponded with the place, date of birth, and race information contained in the pen packet. We further note that the names of the defendant and of the person in the pen packet were identical. *Gollin*, 554 S.W.2d at 686.

The State also argues the pen packet is admissible because the Court of Criminal Appeals found similar proof of identity to be adequate in *Shepperd v. State*, 586 S.W.2d 500 (Tex.Crim.App.1979), wherein the defendant was also charged with being a felon in possession of a firearm. However, in that case, in addition to the photos and physical description contained in the pen packet, the appellant did not object to the admission of the pen packet, but to the contrary, he stipulated to the introduction of the exhibit. On appeal, Shepperd contended that he had not stipulated that he and the previously convicted person were one and the same, but the Court of Criminal Appeals disagreed, holding that the parties had stipulated that appellant and the person named in the pen packet were one and the same. The Court held that the stipulation and the information in the pen packet constituted sufficient proof of identity. *Id.* at 502.

In the final case relied on by the State, *Conley v. State* 390 S.W.2d 276 (Tex.Crim. App.1965), the defendant's stipulation regarding identity was held to be sufficient to show that he was the same person as the previously convicted individual. On rehearing, the Court mentioned that "authenticated prison records which contained ... a photograph and physical description of the inmate" *also* allowed the jury to conclude "that appellant, who was present in the courtroom, was the person named in the two judgments of conviction" used to enhance Conley's sentence. *Id.* at 278.

*Gollin, Shepperd,* and *Conley* all have one thing in common which distinguishes them from the case at bar: evidence of identity which is independent of, or in addition to, the evidence shown in the prison packet.

■ In cases involving proof of a prior conviction as a material element of the case or for enhancement of sentence, identity must be proved beyond a reasonable doubt. *See Wright v. State,* 603 S.W.2d 838, 840 (Tex.Crim.App.1979); *Ex parte Augusta,* 639 S.W.2d 481, 484 (Tex.Crim.App.1982). In such cases, a "proper predicate for introduction" of a defendant's alleged prior conviction "*must* be laid in the trial court *before* the jury ... should be permitted to consider" the conviction. *Cain v. State,* 468 S.W.2d 856, 861 (Tex.Crim.App.1971) (emphasis added). In the absence of independent testimony that appellant was the person convicted of the offense shown in the pen packet, the pen packet exhibit is inadmissible. *See Rose v. State,* 507 S.W.2d 547, 548 (Tex.Crim.App.1974).

There is no evidence in the record indicating appellant's age, birth date, or identifying body scars or tatoos that match those shown in the pen packet.

We have been unable to find a case which holds that photographs and a description of the previously convicted person alone constitute proof beyond a reasonable doubt of identity. Since the proper predicate must be made *before* admission of the conviction record, admission of the pen packet unaided by additional evidence linking appellant with the exhibit constitutes reversible error.

Appellant's fourth ground of error is sustained.

The judgment is reversed and the cause is remanded for a new trial.