### BLAKE & GOODHUE *v.* DANIEL B. TUCKER.

In the trial of cases in this court upon exceptions reserved in the trial of the case in the county court, it is not competent for either party to supply any defect in the case, by the production of any proof, which was not offered in the court below.

If one convey land by deed of quit claim, and covenant against a particular title, which he afterwards acquires, that title enures for the benefit of his grantee, and in discharge of the grantor's covenant. In deriving title to real estate, the question whether each grantor and the immediate preceding grantee is the same person, is a question of fact to be submitted to the jury upon such proof as the parties may have.

The addition " younger" is no part of the name, and being found in one case attached to the name and not in another, raises no doubt of the identity of the person, when the change is readily accounted for on other grounds.

The grantor in a deed poll, and all who claim title under the deed, are bound by recitals in the deed, but are not precluded from showing that a deed, so recited, is defective and void.

THIS was an action of trespasson a tract of land called Avery's Gove, attached to the town of Huntington. Plea, not guilty, and trial by jury.

CHITTENDEN,
January,
1840.

Blake &
Goodhue
v.
Tucker.

Upon the trial in the county court, the plaintiffs offered a charter of Avery's Gore from the State of Vermont to Samuel Avery, dated January 27, 1791, and also the copy of a d^ed, from the same Avery, to Marvin & Crampton, dated November 1, 1790, in and by which deed the said Avery did "give, grant, bargain, sell, alien, release, convey and confirm" unto the said Marvin & Crampton, their heirs and assigns, the land in question, and covenanted to warrant and defend the same against all claims of all persons claiming the same under him, or his assigns, or the State of Vermont; to which deed the defendant objected, on the ground that it was merely a release of the grantor's title, and, having been executed before the grantor had any title, it conveyed nothing. But the court overruled the objection, *pro forma*, and admitted the deed.

The plaintiff read the copy of a deed from the same Marvin & Crampton to one *John Bridgeman of Huntsburgh*, dated September 10, 1793, and then offered the copy of a deed dated Sept. 10, 1794, from *John Bridgeman, jr., of Hinsdale* to Edward Houghton, conveying the same land. To this last deed the defendant objected on the ground that the grantor in this deed was not the same person who was grantee in the other, but the court ruled that the question of identity was for the jury to decide and the deed was read.

The plaintiffs offered an original deed from the same Edward Houghton to them, bearing date the 28th of April, 1822, but acknowledged May 24th, 1837, conveying the same land. The description of the land, in this deed, is as follows; "being the same land conveyed by me to John W. Blake, Esq., late of Brattleboro', deceased, and of which the said John W. died seized, reference being had to the deed from me to the said John W. Blake, deceased, for a description of the whole tract," &c. To this deed defendant objected on the ground that it appeared, by the deed itself, that Houghton had, before that time, conveyed the same land to another grantee.

To obviate this last objection, the plaintiffs offered the copy of a deed from the same Edward Houghton to one John W. Blake, dated December 2, 1794, which was witnessed by one witness only. The defendant insisted that this did not remove the objection and that these plaintiffs could not be

allowed to object to the validity of the deed, last offered in evidence, but the court overruled the objections and the deeds were read.

CHITTENDEN,
January,
1840.

Blake &
Goodhue
v.
Tucker.

The defendant requested the court to charge the jury, that the presumption of law was that the two Bridgmans, named in the conveyances, were different persons, and that, in order to make out that they were identical, the burden of proof was on the plaintiffs, and that, unless they were satisfied by the proof that they were identical, the plaintiffs' title was imperfect.

But the court declined so to charge, but did, among other things, charge the jury, that the question of identity of the two Bridgmans was purely a question of fact for the jury to find from the evidence in the case, and that there was no presumption of law that they were different persons, and that this identity must be found by the jury before they would give the deed from John Bridgman, jr. to Edward Houghton any legal operation. The jury, under the instructions of the court, returned a verdict for the plaintiffs and the defendant excepted.

After the cause was entered in this court, the plaintiffs moved for leave to show that Samuel Avery received a grant, from the State of Vermont, of the lands in question, previous to the execution of his deed to Marvin & Crampton, as will appear from the opinion of the court.

*Wm. P. Briggs and C. Adams*, for defendant.

I. We contend that no title passed by the deed from Avery to Marvin & Crampton.

This deed is dated Nov. 1, 1790, and is a mere release. But, at the date of the deed, the grantor had no title. The charter from Governor Chittenden to him was issued in the year subsequent, and, unless a charter is to be considered more effective than an ordinary deed, the question would seem to be at an end.

II. We contend the court erred in the matter of the two Bridgmans. The deed is to *John Bridgman*, of Huntsburgh, but *John Bridgman, jr.*, of Hinsdale, undertakes to convey, and the simple question is, whether, apparently, these are two persons. If they are, then there is a presumption of *law*, which can only be overthrown by evidence of their identity. Bridgman & Bridgman, jr. are as much two names, indicating different persons, as Bridgman & Bridges would be, or

CHITTENDEN,
January,
1840.
─────
Blake &
Goodhue
v.
Tucker. any other two names.   The close resemblance amounts to nothing, so long as there is any thing to indicate a distinction.

As there was no evidence to show that Bridgman & Bridgman, jr., were the same person, it was pushing a yankee right to the extreme to allow the jury to guess off the title to the land in question.

III. There is another question growing out of the deed from Houghton to the plaintiffs.

It appears, by this deed, that Houghton had previously conveyed the same land to John W. Blake, and that Blake died seized.   By examining this deed to J. W. Blake, it appears to be an ancient deed, dated as early as December 2, 1794, and the land seems to have remained in John W. Blake and his heirs more than forty years before this attempt to twist the title into the hands of these plaintiffs.   The deed from Houghton to J. W. Blake might, originally, have been defective, but the grantee could have enjoined Houghton from any attempt to disturb the title.   But at all events it is quite clear that, after quiet possession for more than fifteen years in John W. Blake, it is too late for Houghton to attempt to convey the title to another.   At the date, or rather delivery, of this deed to the plaintiffs, the title had long been perfected in the heirs of John W. Blake, and there was nothing that could pass by this deed to the plaintiffs.   Houghton surely could not sustain a suit against the heirs of J. W. Blake, and if so, then his grantees cannot against this defendant.   9 Cowen's R. 86.

*Maeck & Smalley* for plaintiffs.

The principle has long been settled, that when the grantor conveys with general warranty against all persons, and has no title at the time of conveying, any subsequent title he may acquire enures immediately for the benefit of his own grantee.   *Jackson* v. *Murray,* 12 Johns. R. 201.   *Jackson* v. *Wright,* 14 Johns. R. 193.

To escape from the application of this principle, the defendant contends that the rule is never applicable except in cases, where the covenant of warranty is general against all persons.   We contend the rule is not thus restricted.

Whenever the grantor has not the title but enters into a special covenant to warrant and defend the grantee against

particular persons; if he subsequently acquire the title from those persons, his deed enures immediately for the benefit of his own grantee, and he is estopped from asserting title in himself. This is evident from the reason of the rule which, in one respect, is to prevent circuity of action. *Comstock* v. *Smith*, 13 Pick. R. 119.

If Avery had recovered against his grantees, under the title which he acquired from the state, after the execution of his deed to them, they could recover the value of the land of him, as he had covenanted against the title of the state.

Whether the Bridgman, who received the conveyance, and he, who executed the same, were one and the same person, was purely a question of fact and properly submitted to the jury. *Junior* is no part of a person's name. 6 Vt. R. 9.

The opinion of the court was delivered by

REDFIELD, J.—In the trial in the county court, it appeared that Samuel Avery, the original grantee of the land under the state, did not obtain his charter until after he conveyed the land. His conveyance was by deed of quitclaim, with a special covenant of warranty against all title then existing, or subsequently to be derived from the state of Vermont.

The plaintiffs' counsel now offer to show, that Avery had, in fact, obtained a grant of the land anterior to his conveyance, by attaching to the papers, already in the case, a duly authenticated copy of the grant. That this may not have sometimes been, by this court, allowed to be done, I am not prepared to say. I very well recollect, as the report of the case shows, that it was done in the case of *Aldis* v. *Burdick*, 8 Vt. R. 21, but by consent of parties. Where the revision of questions, reserved for the full bench, is considered, as it is in some of the American States, in the nature of an application for a new trial, it is common to allow the parties to supply any defects in their case, by record proof. But, in this state, the revision of questions in this court, upon exceptions taken in the court below, is the same in every respect, except the mere form of bringing up the record, as if the trial were had upon a writ of error. The party may still bring his writ of error, or, upon filing his bill of exceptions, the

CHITTENDEN,
January,
1840.
───────
Blake &
Goodhue
v.
Tucker.

case passes up by operation of the statute, if the party, excepting to the decision of the court below, so direct. In which ever form, then, the trial is had, this court can only pass upon the case, as it was before the county court. If there is found error, the party is entitled to a new trial upon the whole case, as a matter of right.

But this court have no doubt that Avery's title, acquired subsequent to his conveyance, as it was derived from the very source of title against which he covenanted, did enure for the benefit of his grantee and in discharge of his own covenant. The general rule, that, where one conveys land, with general covenant of warranty of title to the grantee, his heirs and assigns, all title subsequently acquired by the grantor will enure for the benefit of the grantee, is well established. *Middlebury College* v. *Cheney*, 1 Vt. R. 336. *Comstock* v. *Smith*, 13 Pick. R. 116. *Lowry* v. *Williams*, 1 Shepley's R. 282. As if A. lease land to B. for six years, in which he has no interest, and then purchase a lease of the same land for twenty years, and afterwards leases the same land to C. for ten years, the title in B. is good. Com. Dig. Estoppel, E. 10. 1 Stark. Ev. (6 Ed.) 296. The reason, upon which it is said this rule has been established, is that it will prevent circuity of action, and carry into effect the manifest intention of the parties. For it is not to be presumed that any person, who had covenanted against every title, except that conveyed by him, would afterwards purchase in a title for any other purpose, except to fortify the title of his grantee. Ordinarily he could have no other honest intent. And fraudulent and dishonest intentions it is the object of the law, and the duty of courts, to defeat, so far as practicable. And the whole doctrine of the law of estoppel is based upon this principle ; to effect justice and prevent wrong. Wherever the arbitrary application of the general doctrine of estoppel would be likely to defeat this very salutary object, the cases show that it has been considered the duty of courts to prevent the application. So that at the present time, I apprehend, should that application be allowed to bring about manifest injustice, as in many cases it would, if not qualified or restrained by the discretion of courts, it would be thought that the doctrine of estoppels was a very dangerous weapon in unskilful hands. So

that the skill of the judge, in regard to this subject, consists, not so much in the discovery of the true principle, as in the wisdom of its application to particular cases. The case of *Hubbard* v. *Norton*, 10 Conn. R. 422, was decided upon this ground. So the case of *Hatch* v. *Kimball*, 2 Shepley's R. 9. So also *How* v. *How*, Ib. 351. So also *Harding* v. *Springer*, Ib. 407. In *Hosier* v. *Searle*, 2 B. & P. 299, the very reason urged by Lord Eldon, Ch. J. in delivering the opinion of the court, why the estoppel should operate, is, that such was the obvious intention of the parties. If then a party conveying land, with general covenant of warranty, cannot acquire any title, which will not enure to his grantee, *a fortiori*, where the grantor makes a *special* covenant against a *particular* title, shall that title, when procured by the grantor, enure for the benefit of the grantee. If it were not so, then would general words be more binding than the most definite and studied particularity, and the monstrous absurdity result, that a whole is greater than the sum of all its parts, which is impossible.

The question of identity of John Bridgman and John Bridgman, jr., the former being described as of Huntsburgh, and the latter of Hinsdale, is, undoubtedly, a matter of fact, and, when a doubt arises, should be submitted to a jury, as was done in the present case, upon such proof, as the parties may be able to make. I apprehend, however, that the mere fact, that at one time the addition "younger" is affixed to a name, and not at another, raises no reasonable doubt of its designating the same person, especially when the person does not, at both times, reside in the same town. The inference is just as reasonable, that the man's father resides in one of those towns and not in the other, as that the names designate different persons. We are then left to the common presumption, whether these names intend the same person, which is in favour of the identity, because the name is the same, in both cases, "younger" being no part of the name, (*Brainard* v. *Stilphin*, 6 Vt. R. 9.) and he is engaged in acquiring title to land at one time, and at another, not very remote, in conveying away the same land.

The remaining objection to the plaintiffs' title, is, that he is bound by the recital in Houghton's deed, of a former deed, executed by him to John W. Blake of the same land. It is

CHITTENDEN, no doubt true, that the grantor in a deed poll, and, to some
January, extent, all who claim title under him, are bound by recitals
1840.

Blake & in the deed. But this is but another branch of the same
Goodhue doctrine of estoppel, and is not to be applied to defeat the
v. manifest intention of the parties. It could hardly be supposed
Tucker. that the parties to this deed intended, by the recital
of a former deed to Blake, to preclude the plaintiffs from
setting up any title to the land. In that view the convey-
ance would be a very useless ceremony. The deed of
Houghton to Blake was referred to in order to fix the bounda-
ries of the land, and to fix notice of such a deed upon the
plaintiffs, and to foreclose any claim he might have upon
Houghton on that account. But it must have been expect-
ed that the plaintiffs would hold all Houghton's title to the
land, which had not been already conveyed to Blake. And
it has been held that the mere reference to an instrument
will not preclude the party to the deed from disputing the
existence, even, of the writing referred to. *Parker* v. *Parker*,
17 Mass. R. 370. Note to Am. Ed. 1820 of *Yelverton*,
226. But, at all events, the plaintiffs, if bound to the fullest
extent by the reference to the deed, as a recited, are only
bound by the deed to the extent of its obligation, and are not
precluded from producing it to the court; although perhaps
the recital of the deed would be sufficient for the defendant
until the recited deed is produced. 2 Stark. Ev. 314. The
deed when produced, being witnessed by only one witness,
proved no impediment to the plaintiffs' title.

Judgment affirmed.