WILLIAM M. BAILEY, Trustee, *vs.* WILLIAM A. HOPPIN, Trustee, *et als.*

Conveyance of certain property to trustees, with power to sell, mortgage, or change the investments; in trust, to apply the income to the grantor's wife during her life, and after her death, to the grantor during his life, with power to mortgage or sell in case the income of the trust fund should not suffice for the purposes of the trust; and in further trust after the death of the wife of the grantor, and of the grantor, to convey the trust estate to those of the children of the grantor and his wife "who shall be living at the decease of the survivor of them (the grantor and the grantor's wife), and to such issue, then living, of any one or more of the children of the grantor and said wife, who may then be deceased, their respective heirs and assigns, in equal shares, as and when said children and issue shall respectively attain the age of twenty-one years, or die under that age, in a course of distribution, so that the issue of any deceased child may take, by way of substitution, the share only which the parent would have taken if living;" and in further trust, after the death of the grantor and his wife, and before the period of distribution, to accumulate, or, in the discretion of the trustee, to apply the whole or part of the share "to which any of said children or issue shall, for the time being, be entitled under the trusts aforesaid in said trusts, premises, investments, income, and accumulations, for or towards his or her advancement in the world, or otherwise for his or their benefit."

*Held,* that the equitable remainders to the children were contingent remainders.

After the death of the grantor, and before the death of the grantor's wife, one of the children executed a quit-claim deed of all his right, title, and interest, present or future, vested or contingent, in the trust estate. This deed also contained a covenant of warranty by which the covenantor warranted the land and property in question, which was described in the deed, to the grantee, his heirs and assigns, against the lawful claims of all persons claiming by, through, or under the covenantor.

*Held,* that this deed, although at law inoperative as conveying a contingent remainder or a naked possibility, yet, considered with regard to its contained covenants, would be upheld in equity as an executory agreement, and would be enforced according to its intent.

*Held,* further, that this deed was in equity operative.

*Held,* further, that the right or estate taken by the grantee and covenantee of this deed was in equity transmissible to his heirs and devisees.

The grantee and covenantee of this deed having died testate:

*Held*, that his devisee took his interest, right, or estate under it.

The world "seized" in Gen. Stat. R. I. cap. 171, § 1, of wills, is tantamount to "having."

BILL IN EQUITY for instructions. The facts involved are stated in the opinion of the court.

*Charles Bradley*, for the complainant.

*George H. Browne*, for the respondent Hoppin. The law favors the vesting of estates, and when a gift is made to a person. *in esse*, it passes to the legatee as a vested estate, immediately in case of a deed, and immediately on the death of the testator in case of a will, and if there be a prior gift determinable upon an event certain to take place, and there be a gift over after such determination, the last gift will vest with the first, and it will be held that the enjoyment of the gift is postponed, but not the gift itself. *Staples & Pearce, Trustees*, v. *De Wolf et als.* 8 R. I 74 ; *Kelly et al. v. Dike et als.* 8 R. I. 436, 450 ; 2 Greenleaf's Cruise, 209, §§ 35, 36 ; 210, § 40 ; 225, § 76.

These cases seem to be conclusive as to the construction of the cause at bar.

A mere possible contingency will not, and, indeed, not every probable contingency will prevent the vesting of a remainder. See also 2 Redfield on Wills, 606, § 21, and 608, § 23, and especially 609, § 26, and cases cited, 609–611, §§ 26–29, and cases cited.

The gift here, too, though the term is not used, is of a residue, and that has been held to be an important circumstance in favor of a construction that the estate vests. See cases above cited and cases in them cited, 1 Jarman on Wills, 767.

The authority given to make advances is also an important fact in favor of the estates vesting. *Kelly et al.* v. *Dike et als.* above cited.

It is not necessary to discuss what would have been the effect if Arnold Burges had died before arriving at twenty-one years of age, as no such contingency happened. Arnold Burges, it is admitted, is alive now. But it may be remarked, however, that so strong is the presumption in favor of the vesting of estates in remainder that they have been holden to vest, though liable to be divested upon the happening of some contingency.

*Charles H. Parkhurst,* for the respondent Katharine Wheaton, claimed that a conveyance should be made to her absolutely because :

1. The interest of Arnold Burges in the trust estate was contingent upon his surviving his mother and father and did not vest until that contingency happened, and though not assignable at law to a stranger, yet his deed was good in equity and operated as an estoppel upon him by virtue of the covenants in his deed to prevent him from asserting title to the trust estate in violation of his covenants. *Holroyd* v. *Marshall,* 10 H. L. 191 ; *Hart* v. *Farmers' & Mechanics' Bank,* 33 Vt. 252 ; *Stover* v. *Eycleshimer,* 46 Barb. S. C. 84 ; *Pennock* v. *Coe,* 23 How. U. S. 117 ; *Bayler* v. *The Commonwealth,* 40 Pa. St. 37 ; *Mitchell* v. *Winslow,* 2 Story, 630 ; *Letcher* v. *Shroeder,* 5 J. J. Mar. 513 ; *Varick* v. *Edwards,* 1 Hoff. Ch. 382 ; *Meriweather's Adm'r* v. *Herran,* 8 B. Mon. 162 ; *Jackson* v. *Waldron,* 13 Wend. 178 ; *Brown* v. *Williams,* 5 R. I. 309 ; *McCusker* v. *McEvey,* 9 R. I. 528.

2. Robert Wheaton at his decease was not seised ·of the estate purporting to have been conveyed to him by Arnold Burges and therefore it did not pass under his will, but descended to his heir at law.   Gen. Stat. R. I. cap. 171, §§ 1, 3.

3. No estate having ever vested in ‘Robert Wheaton in his lifetime the trust estate which would have vested in him in equity upon the decease of Mrs. Burges is not liable for his debts as it was not his real estate at his decease.   Gen. Stat. R. I. cap. 178, § 2.

4. The contingent equitable estate of Robert Wheaton in the said trust estate was not and could not be assets in the hands of his executor, when his estate had been represented insolvent by his executor and could not be sold by his executor for payment of debts, for the reason that at most it was a contingent estate, liable to be defeated by the death of Arnold Burges in the lifetime of his mother.

5. The trustee should be directed to convey one sixth part of said trust estate to Katharine Wheaton, free of all trusts.

*Edwin Metcalf & George Metcalf, Jr.,* for the respondent Arnold Burges.   1. Arnold Burges took nothing but a possibility without an interest, resting upon a double contingency.   *a.* It' was a contingent remainder, limited upon an uncertain event : by

the trust deed, in case the income was insufficient to support the grantor and his wife, the trustee was directed to mortgage or sell portions of the estate, and apply the proceeds to their support. There was consequently something more than a life estate in the grantor and his wife, for, under these provisions, the trustee would have been authorized, if necessary, to sell the whole estate and use the proceeds for the benefit of the so-called life tenants. In such an event the remainder would never have vested in the children. 2 Blackstone Comment. Cooley's ed. 169; 4 Kent Comment. 12th ed. 208, 209. *b.* It was a contingent remainder, limited to an uncertain person. The trust deed provides that the trustee shall convey the estate to such children of the grantor and his wife as shall be living at the decease of the survivor, and to then living issue of deceased children, the issue to take the share which the parent would have taken if living. In *Olney* v. *Hull,* 21 Pick. 311, where a testator gave a life estate to his wife, and provided that at her death the land should be equally divided among his "surviving sons," it was held that "surviving sons" meant those who survived the wife, and that until her death, it was uncertain who would be alive to take, and consequently the sons took only a contingency without an interest. To the same effect *Thomson* v. *Ludington,* 104 Mass. 193, citing and affirming *Olney* v. *Hull.* In *Brown* v. *Williams,* 5 R. I. 309, the devise was to "such children as shall be living at the time of my said daughter's decease, the issue of a deceased child to take what the parent, if living, would have taken;" it was held that the children who survived the said daughter were alone entitled to participate; that during her life it could not be ascertained who would be alive to take; that "what their parents, if living, would have taken," strongly implied that the parents were to take nothing unless living at the death of the said daughter; and that it was therefore a mere contingency without an interest. 2 Blackstone Comment. Cooley's ed. 168, 169; 4 Kent Comment. 12th ed. 203, n. 1, 208, 209. The language of the trust deed in this case indicates, even more strongly than that commented upon in the above cited authorities, the intention of the grantor to create a mere contingency without an interest. The point raised by the respondent Hoppin, that Arnold Burges was *in esse* at date of the trust deed, is irrelevant, as the question is not who were *in*

*esse* at that date, but who were so at the death of the grantor's wife ; it leaves out of sight the fact that until her death the parties who were to take were not ascertained. The cases of *Staples & Pearce, Trustees,* v. *De Wolf et al.* 8 R. I. 74, and *Kelly et als.* v. *Dike et als.* 8 R. I. 436, are not in point ; in those cases the parties who were to take were ascertained by name or description, and it was manifest that it was the intention of the testators to " annex futurity to the time of payment only, and not to the substance of the gift."

2. A possibility without an interest is not assignable at law or in equity. *Watson* v. *Woods,* 3 R. I. 226 ; *Brown* v. *Williams,* 5 R. I. 309, 316. Hence the deed to Robert Wheaton was void *ab initio.*

3. In this case no title by estoppel ever inured to Robert Wheaton or to Katharine Wheaton : *a.* As Arnold Burges had only a possibility without an interest, resting upon a double contingency, he could convey no greater present right to Robert Wheaton ; any future greater right under the deed must rest upon estoppel ; but title by estoppel does not inure until the grantor gets the after-acquired title. It is obvious, therefore, that if the grantee dies before the grantor gets any title, the grantee personally will never have any. Hence Robert Wheaton, if he took anything, held the same possibility as Arnold Burges, with the additional contingency in regard to his own survival until Arnold Burges had acquired a title. Consequently he had only a possibility without an interest, resting upon a triple contingency ; and as he died before Arnold Burges had any title, no title ever inured to him personally. *Miller* v. *Ewing,* 6 Cush. 34 ; *Trull* v. *Eastman,* 3 Met. 121 ; *Jackson* v. *Bradford,* 4 Wend. 619 ; *Crocker* v. *Pierce,* 31 Me. 177 ; *Blanchard* v. *Ellis,* 1 Gray, 195 ; *Chew* v. *Barnet,* 11 Serg. & R. 389 ; *McCusker* v. *McEvey,* 9 R. I. 528 ; 3 Washburn Real Property, 103 ; 4 Kent Comment. 12th ed. 98. *b.* As Robert Wheaton had only a possibility without an interest, it was neither descendible nor devisable, either at common law or under the statutes of Rhode Island. *Brown* v. *Williams,* 5 R. I. 309, 316–318 ; *Olney* v. *Hull,* 21 Pick. 311 ; *Thomson* v. *Ludington,* 104 Mass. 193. Gen. Stat. R. I. cap. 171, §§ 1, 13, provide that any person lawfully seised of any lands, &c., may devise them, and that all estate

not devised shall be distributed as if such person died intestate. Cap. 176, § 1, provides that whenever any person having title to real estate, &c. As Robert Wheaton was never seised nor ever had any title or estate, but only a possibility of such title or estate, there was nothing in him that was devisable or descendible; consequently the possibility perished at his death, and his heir, Katharine Wheaton, has no claim upon the estate. *c.* The doctrine that there is no estoppel when the truth appears, applies in this case to this extent at least, that the deed of Arnold Burges shows on its face and by reference to the trust deed, that Arnold Burges had nothing but a possibility, without an interest, and consequently Robert Wheaton knew that he took nothing more, and never would take, unless there was an after-acquired estate in his, Wheaton's, lifetime, to feed the estoppel. Bigelow on Estoppel, 263, *sq.; Gilmer* v. *Poindexter,* 10 How. U. S. 257, 268; *McCusker* v. *McEvey,* 9 R. I. 528.

*March* 6, 1880. DURFEE, C. J. This is a bill for instructions. It shows that on the 13th of March, 1862, Tristam Burges conveyed certain land in East Providence, and pew No. 84 in St. John's Church, in the city of Providence, to Charles S. Bradley, his heirs and assigns, in trust, and that in 1863, the said Charles S. Bradley having resigned as trustee, William M. Bailey, the complainant, was appointed trustee in his stead. The deed empowers the trustee to sell or mortgage the property or change the investment, and generally to dispose of the property as he shall deem best, but *in trust,* nevertheless, after paying expenses, &c., to apply the residue of the income to the support of the grantor's wife during her life, and after her death to the grantor's support during his life, with power, in case the income should not be sufficient for their comfortable support, to mortgage or sell, and apply the proceeds; and on further trust, on the decease of the grantor and his wife, to convey the trust estate to such of the children of the grantor and his wife " who shall be living at the decease of the survivor of them, and to such issue, then living, of any one or more of the children of the grantor and said wife who may then be deceased, their respective heirs and assigns, in equal shares, as and when said children and issue shall respectively attain the age of twenty-one years, or die under that age, in a course of distribution, so that the issue of any de-

ceased child may take, by way of substitution, the share only which the parent would have taken if living ; " and upon further trust, after the death of the grantor and his wife, until the period of conveying, to accumulate the property, or, in his discretion, to apply the whole or any part of the share or shares " to which any of said children or issue shall, for the time being, be entitled under the trusts aforesaid, in said trusts, premises, investments, income, and accumulations, for or towards his or her advancement in the world, or otherwise for his or their benefit."

Tristam Burges died in 1863, leaving his wife and six children by his wife surviving him. His wife died in April, 1879, leaving the six children surviving her. The six children were all living when the trust deed was executed. They were all over twenty-one at the death of the wife. On October 29, 1870, Arnold Burges, one of the six children, gave to Robert Wheaton, his heirs and assigns, a quit-claim deed of all his right, title, and interest, in the trust estate, the granting part of the deed concluding with the words : " Hereby releasing and intending to release all right title and interest, claim and demand in law or equity, vested or contingent, which I have or at any time hereafter may, or but for these presents might have in or to said trust estate." The deed contained a covenant of warranty of " the aforedescribed land and property " to the grantee, his heirs and assigns, against the lawful claims and demands of all persons claiming by, through, or under the grantor. Robert Wheaton died in 1874, leaving a will, executed March 12, 1873, in which he devised all his estate, real and personal, which he then had or might subsequently acquire, after the payment of his debts, to William A. Hoppin, in trust for his daughter, Katharine Wheaton.

The time for the determination of the trust having arrived, the trustee desires to be instructed to whom he shall convey the one sixth of the trust estate, to which Arnold Burges would have been entitled without question but for his quit-claim deed to Robert Wheaton. William A. Hoppin claims that under the trust deed Arnold Burges had in equity a vested remainder, which passed by his deed to Robert Wheaton, and by Robert Wheaton's will to him in trust for Katharine Wheaton. Katharine Wheaton claims that Arnold Burges had only a contin-

gent remainder which, though neither assignable nor devisable at law, would pass in equity by estoppel to Robert Wheaton, under the deed of Arnold Burges to him, and would descend from Robert Wheaton to her, she being his sole heir at law. Arnold Burges claims that his interest in the trust estate was so contingent and uncertain that it was not assignable either at law or in equity, and that it is not bound by any estoppel, and consequently that he is himself entitled to have the said one sixth conveyed to him, notwithstanding his deed to Robert Wheaton.

The first question which we will consider is, Were the equitable remainders created by the trust deed vested or contingent? We think they were clearly contingent. They were limited, after the death of the grantor and his wife, not to their six children, but only to such of them as should then be living, and to the issue of such of them as should then be dead. It was uncertain at the creation of the trust, and it continued to be uncertain during the life of the surviving parent, who, if any, of the children would survive. Arnold Burges might or might not survive; but unless he did survive he would not be one of the persons to whom the equitable estate in remainder was limited. It was uncertain not only *when* he would be entitled to the sixth of the estate in *possession,* but *whether* he would ever be entitled to it, either in possession or *right.* We think, therefore, that the equitable remainders were contingent, and continued so until the death of Mrs. Burges, the equitable donees in remainder being then first ascertained. 4 Kent Comment. *208 ; *Biggot* v. *Smyth,* Cro. Car. 102 ; *Olney* v. *Hull,* 21 Pick. 311 ; *Thompson* v. *Ludington,* 104 Mass. 193 ; *Brown* v. *Williams,* 5 R. I. 309.

The counsel for William A. Hoppin cites the provision for advancements, as proof that the grantor intended to have the equitable remainders vest immediately. It will be seen, by reference to the provision, that it only relates to a period after the death of the grantor and his wife, and therefore, though it may evince an intent on the part of the grantor to have all the equitable remainders vest immediately after their death, whether all the persons entitled in remainder were then twenty-one years old or not, we do not perceive that it evinces such an intent for any previous period.

The next question is, What effect is to be given to Arnold

Burges's deed to Robert Wheaton ? It seems to be settled that at common law such a deed is inoperative as a grant because the grantor, so long as the precedent estate endures, has only a naked possibility, without an interest, which is not assignable. 4 Kent Comment. *161, 162; *Jackson* v. *Waldron*, 13 Wend. 178. But the deed here is not a simple grant, but it contains a covenant of warranty, by which the grantor agrees to warrant the described land and property to the grantee, his heirs and assigns, against the lawful claims of all persons claiming by, through, or under him. The covenant, it will be seen, is not confined to the right, title, and interest released or assigned, but extends to the land and property described, and must be held to include, at least, whatever the deed purports to release or assign, and the deed purports to release and assign not only the grantor's present and vested property, but also his future and contingent property, and in fact, any property of any kind which he may have, or which but for his deed he might have at any time thereafter in the trust estate. It has been held that a grantor is barred, even at common law, from claiming against the grantee or his heirs by such a warranty, by way of rebutter or estoppel, to prevent circuity of action. *Trull* v. *Eastman*, 3 Met. 121; *Blake & Goodhue* v. *Tucker*, 12 Vt. 39 ; *Jackson* v. *Bradford*, 4 Wend. 619. But the case at bar is not an action at law, but a suit in equity, relating to an equitable estate, and determinable therefore upon purely equitable principles. In equity it is well settled that a deed which purports to convey property, which is in expectancy or to be subsequently acquired, or which is not of a nature to be grantable at law, though inoperative as a grant or conveyance, will be upheld as an executory agreement, and enforced according to its intent, if supported by valid considerations, whenever the grantor is in a condition to give it effect. *Varick* v. *Edwards*, 1 Hoff. Ch. 382; *Whitfield* v. *Fausset*, 1 Ves. 387 ; *Wright* v. *Wright*, 1 Ves. 409 ; *Duke of Chandos* v. *Talbot*, 2 P. Wms. 601, 608 ; *Theobalds* v. *Duffoy*, 9 Mod. 101; *Holroyd* v. *Marshall*, 10 H. L. 191 ; *Williams* v. *Winsor, ante,* 9 ; *Bayler* v. *The Commonwealth*, 40 Pa. St. 37. We think, therefore, that there can be no doubt that Robert Wheaton, if living, would be entitled to have the deed, if fairly obtained for an adequate consideration, which is not disputed, supported and

enforced in equity for his benefit. We also think the right of Robert Wheaton to have the deed supported and enforced, according to its intent, is transmissible in equity to his heir or devisee, notwithstanding the precarious nature of the subject of the deed. A court of equity does not stop, in a case like the present, to get itself entangled in the web of subtle refinements which renders the law of contingent remainders so perplexing to the common law lawyer; but, brushing them aside, it regards only the fact that the grantee of the deed has paid his money for it, and that he is therefore entitled, in good conscience, to have the fruit of it, though it may exist but in promise, not only conserved to him while living, but transmitted to his heirs and devisees. In equity, indeed, it is the executory contract for the future estate which is transmitted.

The final question is, Who is entitled to the benefit of the deed, the heir or the devisee ? The counsel for the heir contends that she is entitled to it, because our statute, Gen. Stat. R. I. cap. 171, § 1, confers the right of devising real estate only on persons who are " seized." The word " seized " there, is, however, we think, evidently used in the broad sense of *having*, which is the word used in the old English Statute of Wills, 32 Henry VIII. cap. 1, under which it has been held that every descendible interest, of which the testator has not been disseised, is devisable. See *Sutton* v. *Miles*, 10 R. I. 348, 353, where the meaning of the word, used in the second section of the same chapter, is considered and explained and the authorities cited. Under the English statute a devise of equitable estates, including estates which have only been contracted for, and even where the contract by its terms is not performable until after the execution of the will, is upheld as good in equity. *Greenhill* v. *Greenhill*, Finch Prec. in Ch. 320; *Acherley* v. *Vernon*, 9 Mod. 68, 78; *M'Kinnon* v. *Thompson*, 3 Johns. Ch. 307. Under these precedents the only difficulty here is, that the estate contracted for was, when the will was made and until after it went into effect, something which might never exist. The contract, however, was, as we have seen, valid in equity ; and therefore the contract itself, whatever subtle lawyers may think of the subject of it, was a valuable property, and as such we think it must be held to have passed to William A. Hoppin under the will.

Our conclusion therefore is that the complainant ought to convey the said one sixth of the trust estate to William A. Hoppin, as devisee and trustee under the will of Robert Wheaton, subject to the trusts in the will declared. It may be thought that, according to the view which we have taken, a conveyance or release from Arnold Burges will be necessary to perfect the title. This would be so if his estate were legal; but, being equitable, we think his deed, though inoperative at law, will in equity be operative according to its intent. *Decree accordingly.*

NOTE. — The deed considered in the foregoing decision has already been before this court on other points, in *Bailey* v. *Burges,* 10 R. I. 422, and in *Bailey* v. *Burges,* 11 R. I. 330.